**Blair MERSEREAU, Petitioner,**

v.

**John J. INGHAM, District Director, US Immigration and Naturalization Service, Buffalo District, Respondent.**

**No. 94–CV–0932C(H).**

United States District Court,
W.D. New York.

Jan. 25, 1995.

Serotte, Reich & Seipp (Mark T. Kenmore, of counsel), Buffalo, NY, for petitioner.

Patrick H. NeMoyer, U.S. Atty. (James W. Grable, Sp. Asst. U.S. Atty., of counsel), Buffalo, NY, for respondent.

CURTIN, District Judge.

Petitioner/plaintiff Blair Mersereau seeks a preliminary injunction requiring the respondent/defendant John J. Ingham, District Director of the Immigration and Naturalization Service ("INS"), Buffalo District, to admit him into the United States as a conditional permanent resident or, in the alternative, to parole him into this country during the pendency of this action. The INS claims that Mr. Mersereau is not entitled to be admitted into the United States, and that this court lacks jurisdiction to grant the relief he seeks.

## BACKGROUND

The factual background is not seriously in dispute. Blair Mersereau, a Canadian citizen, obtained status as a conditional permanent resident alien on April 12, 1989, following his marriage to a United States citizen on August 30, 1988. The couple lived in Holliston, near Boston, Massachusetts. The marriage was a stormy one. The couple separated in early 1990, and were divorced in 1992. On December 6, 1990, the INS Boston District received a letter from Mr. Mersereau's spouse stating that she did not wish to file a joint petition to remove the conditional basis of his permanent resident alien status. The letter suggested that Mr. Mersereau had married his spouse to obtain resident alien status. The bona fides of the marriage was thus placed in issue.

On May 7, 1991, the INS Eastern Service Center in St. Albans, Vermont, mailed a Notice of Termination of Conditional Residence Status to Mr. Mersereau at his last known address, indicating that his permanent residence status was terminated as of April 13, 1991, for failure to file a petition under § 216(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1186a(c). On September 4, 1991, the INS Boston District issued an Order to Show Cause, charging him with deportability as a former conditional resident alien whose status had been terminated. Following an *in absentia* deportation hearing held in Boston on October 23, 1991, an Immigration Judge ordered him deported to Canada. The hearing and deportation order were subsequently determined to be ineffective when the INS learned that he had not been served with a copy of the Order to Show Cause.

After separating from his spouse in 1990, Mr. Mersereau took up residence in Evansville, Indiana, where he has been living with a companion, Donna Gale Hurt. On October 25, 1994, following a trip to Canada, he attempted to enter the United States at Detroit, Michigan, claiming to be a returning resident alien. He was accompanied by a female whom he identified as his spouse. During INS secondary inspection, he admitted that he knew his alien registration card had expired in April, 1991, that he was divorced from his former spouse, and that he had done nothing with respect to his immigration status following the divorce. He was refused admission, and was permitted to withdraw his application for admission and return to Canada in lieu of commencement of an exclusion proceeding.

On or about November 16, 1994, Mr. Mersereau mailed a Petition to Remove the Conditions on Residence ("waiver application," INS Form I-751) to the INS Northern Service Center in Lincoln, Nebraska. On November 21, 1994, he filed an application with the INS Buffalo District Office, requesting parole into the United States pending consideration of his waiver application (INS Form I-131).

Mr. Mersereau's waiver application was received and filed at the INS Northern Service Center on December 2, 1994. A Notice of Action ("receipt notice," INS Form I-797)

was issued on December 5, 1994. The receipt notice contained language advising Mr. Mersereau that his alien card had been extended for six months, with employment and travel authorized.

On December 7, 1994, the INS Buffalo District Director, John J. Ingham, denied Mr. Mersereau's parole application, based on the record of termination of his conditional permanent resident status on April 12, 1991. Five days later, however, on December 12, 1994, Mr. Mersereau's attorney, William Z. Reich, received the waiver application receipt notice from the INS Northern Service Center. On the following day, Mr. Mersereau appeared at the Lewiston, New York, Port of Entry, accompanied by Mr. Reich, seeking admission as a returning resident based upon the language in the receipt notice that appeared to have extended his conditional resident status. He was again denied entry, on the grounds that he was an immigrant not in possession of a valid document authorizing entry. He was issued a Notice to Applicant for Admission Detained for Hearing Before Immigration Judge (INS Form I–122). An exclusion hearing has now been set for February 28, 1995.

Immediately following the issuance of the I–122 to Mr. Mersereau at Lewiston, on December 13, 1994, Mr. Reich wrote to INS Buffalo District Director Ingham, again requesting that Mr. Mersereau be paroled into the United States. In his letter, Mr. Reich informed Mr. Ingham that Mr. Mersereau had been denied admission at Lewiston despite his possession of a waiver application receipt notice which appeared to extend his status as a conditional resident and to authorize travel. On December 16, 1994, Mr. Reich was informed by the Deputy Assistant Director of the INS Buffalo District Office that Mr. Ingham would not admit or parole Mr. Mersereau into the United States.

Four days later, on December 20, 1994, Mr. Mersereau filed this action, seeking, *inter alia*, an order directing District Director Ingham to admit him to the United States upon presentation of his waiver application receipt notice or, in the alternative, an order directing Mr. Ingham to parole him into the United States during the pendency of the exclusion proceedings. In his motion for a preliminary injunction, he concedes that his waiver application was not filed within the time period prescribed by § 216 of the INA, 8 U.S.C. § 1186a, and INS regulations. He argues, however, that the District Director of the INS Northern Service Center had exclusive authority under the regulations to excuse the late filing, and that that authority was exercised by the issuance of the waiver application receipt notice. He maintains that the issuance of the receipt notice gave him the status of a waiver applicant to whom the INS had granted the benefits of a six-month extension of conditional permanent residence and authorization to work and to travel. He argues that the receipt notice itself constitutes documentation sufficient to support his readmission into the United States pursuant to INS regulations. Thus, he maintains, he was wrongfully denied admission at Lewiston on December 13, 1994, and wrongfully placed in exclusion proceedings.

Mr. Mersereau also claims that he was wrongfully denied parole into the United States. Although less clearly argued, it is apparent that Mr. Mersereau's position is that in the absence of a grant of admission, District Director Ingham had, under the circumstances, an obligation to parole him into this country pending resolution of his immigration status.

Mr. Mersereau claims that he is suffering irreparable harm by being excluded from the United States while his immigration status is being resolved. He points out that he has property in Indiana, where he has lived since 1990. He has been living there with his companion, Donna Gale Hurt, and has become a co-obligor on the refinancing of their house. The obligation is approximately $58,-000.00, and the mortgage payments are $500.00 per month. Failure to make the payments could result in foreclosure and loss of the house. In addition, he owns a tractor-trailer, purchased with a loan on which the current obligation is approximately $45,-000.00. Monthly payments on the loan are about $1,268.00. Because of his inability to enter the United States, he cannot get to his truck in order to make a living so that he can make the payments on his truck and his

house. He is the only person who is qualified to drive the truck, and he is in danger of failing to meet his payments. If he cannot do this, he will lose both the truck and his business.

In response, the INS maintains (1) that this court has no jurisdiction to entertain Mr. Mersereau's claims since, it contends, he has failed to exhaust his administrative remedies; (2) that Mr. Mersereau's claim that he is entitled to parole into the United States pending resolution of his status has been rendered moot, because on January 4, 1995, the INS Northern Service Center rejected his waiver application on the grounds that he was not eligible to file that application as a former conditional resident who had departed the United States; (3) that Mr. Mersereau has not made the requisite showing of irreparable harm to warrant a preliminary injunction, because irreparable harm cannot be shown by submitting to an agency proceeding (here, the exclusion proceeding); (4) that Mr. Mersereau cannot demonstrate a likelihood of success on the merits with regard to his claim for admission, because he cannot show that his waiver application would be likely to be accepted and approved by the INS; and (5) that he cannot demonstrate a likelihood of success on the merits with regard to the denial of parole, because District Director Ingham's discretionary decision was based upon a facially legitimate and bona fide reason—that his conditional permanent resident alien status expired on April 12, 1991.

## DISCUSSION

### A. Jurisdiction

#### 1. Admission

■ Mr. Mersereau has been placed under exclusion proceedings pursuant to §§ 235(b) and 236 of the INA, 8 U.S.C. §§ 1225(b) and 1226. He concedes that he is an alien seeking admission or readmission into the United States, so it is beyond dispute that an exclusion proceeding is the proper vehicle for determining his admissibility. 8 U.S.C. §§ 1225(a), 1226(a); *Landon v. Plasencia,* 459 U.S. 21, 27–28, 103 S.Ct. 321, 326–327, 74 L.Ed.2d 21 (1982). Under § 106(c) of the INA, "[a]n order of deportation or of exclusion shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him as of right under the immigration laws and regulations...." 8 U.S.C. § 1105a(c). Mr. Mersereau maintains that the INS erred in placing him into exclusion proceedings, and that exhaustion should not, therefore be required. This argument is to no avail. *Xiao v. Barr,* 979 F.2d 151 (9th Cir.1992) ("even when as alien is not, strictly speaking, seeking to attack a final order of exclusion, judicial review is precluded if the alien has failed to avail himself of all administrative remedies, one of which is the exclusion hearing itself," *Id.* at 153). *See also, Rafeedie v. I.N.S.,* 880 F.2d 506, 510–518 (D.C.Cir.1989). It is clear that this court has no jurisdiction to adjudicate Mr. Mersereau's claim that he should be admitted into the United States.

#### 2. Parole

■ Section 212(d)(5)(A) of the INA provides, in pertinent part, that "[t]he Attorney General may ... in his discretion parole into the United States temporarily under such conditions as he may prescribe for emergent reasons or for reasons deemed strictly in the public interest any alien applying for admission to the United States ..." 8 U.S.C. § 1182(d)(5)(A). Responsibility for making parole decisions has been delegated to INS District Directors. 8 C.F.R. §§ 100.2(e) and 212.5. Such decisions are subject to judicial review by the federal district courts. *Bertrand v. Sava,* 684 F.2d 204, 210–211 (2d Cir.1982); *Zhang v. Slattery,* 840 F.Supp. 292, 294 (S.D.N.Y.1994). It is plain enough that this court has jurisdiction to review the claim that District Director Ingham wrongfully denied parole to Mr. Mersereau.

### B. Preliminary Injunction

#### 1. The Applicable Standard

■ A party seeking preliminary injunctive relief against governmental action taken in the public interest pursuant to a statutory or regulatory scheme must demonstrate (1) that it is likely that he will suffer irreparable harm if equitable relief is denied, and (2) a

likelihood of success on the merits. *Able v. United States,* 44 F.3d 128 (2d Cir.1995); *Borey v. National Union Fire Insurance Co. of Pittsburgh, Pennsylvania,* 934 F.2d 30, 34 (2d Cir.1991); *Plaza Health Laboratories, Inc. v. Perales,* 878 F.2d 577, 580 (2d Cir. 1989).

### 2. *Likelihood of Success on the Merits*

■ Because this court has no jurisdiction to review Mr. Mersereau's claim that he should be admitted into the United States, he may obtain preliminary injunctive relief in this action only if he can demonstrate a likelihood of success on the merits of his claim that he was wrongfully denied parole by District Director Ingham.

The Second Circuit has stated that the scope of review of the discretionary decisions of INS District Directors to parole unadmitted aliens is "necessarily narrow." *Bertrand v. Sava,* 684 F.2d at 211. The *Bertrand* court held that decisions under 8 U.S.C. § 1182(d)(5) must be made " 'on the basis of a facially legitimate and bona fide reason.' " *Id.* at 212 (quoting *Kleindienst v. Mandel,* 408 U.S. 753, 770, 92 S.Ct. 2576, 2585, 33 L.Ed.2d 683 (1972)). However, the court made it clear that exercise of the discretionary power "must be viewed at the outset as presumptively legitimate and bona fide in the absence of strong proof to the contrary. The burden of proving that discretion was not exercised or was exercised irrationally or in bad faith is a heavy one and rests at all times on the unadmitted alien challenging denial of parole." *Id.* at 212–13.

■ More recently, the Second Circuit has noted that "the cases that establish the principle of substantial deference [to the discretionary decisions of executive agencies] have involved questions concerning the admittance or exclusion of aliens who have *never been lawfully admitted to the United States.*" *Etuk v. Slattery,* 936 F.2d 1433, 1443 (2d Cir.1991) (emphasis added) (citing *Kleindienst v. Mandel,* 408 U.S. at 770, 92 S.Ct. at 2585, and *Bertrand v. Sava,* 684 F.2d at 211). Where a plaintiff *has* been lawfully admitted into the United States, his legal status has been altered and his rights enhanced, and the exercise of the INS's discretionary power

may be subject to more intense judicial scrutiny. *Id.* at 1443–44. This raises the question of whether the highly deferential standard of review set out in *Bertrand v. Sava* is the proper one to apply in a case like the present one, in which the status of the plaintiff falls somewhere between that of an alien who has *never* been lawfully admitted to the country and one who is currently, indisputably, a lawful permanent resident.

I find that there is at least a likelihood that Mr. Mersereau can show that District Director Ingham abused his discretion in making his parole decision, even under the deferential standard of review of *Bertrand v. Sava.* In his letter of December 7, 1994, to Mr. Mersereau's attorney, Mr. Ingham indicated that parole was being denied because Mr. Mersereau's conditional permanent resident status had been terminated—*i.e.,* because Mr. Mersereau was an excludable alien. There is a strong argument to be made that apparent excludability does not in itself constitute a "facially legitimate and bona fide reason" for denying parole. *Hamaya v. McElroy,* 797 F.Supp. 186, 193 (E.D.N.Y.1992).

> To regard the fact of apparent excludability—a fact necessarily common to *every* detained alien seeking parole under section 212—as a reason for denying release is to turn logic on its head. It would deprive the regulation of all meaning, creating an administrative Catch–22 in which no release could ever qualify as "strictly in the public interest."

*Id.* In this case, Mr. Ingham provided no reason other than Mr. Mersereau's apparent excludability as a basis for his parole decision, either in his December 7, 1994, letter or, apparently, in response to Mr. Mersereau's renewed request for parole submitted on December 13, 1994.

■ Even if apparent excludability were regarded as a legitimate basis for the denial of parole, there would still be a strong argument that Mr. Ingham abused his discretion in basing his parole decision on excludability after he became aware that Mr. Mersereau possessed a valid waiver application receipt notice. Mr. Mersereau argues with some

force that the District Director of the INS Northern Service Center had exclusive authority to excuse the late filing of his waiver application, under 8 C.F.R. §§ 216.4 and 216.5; that that authority was exercised when the receipt notice was issued; that pursuant to the issuance of the receipt notice, and under its express terms, he has the status of a waiver applicant to whom the INS had granted a six-month extension of conditional residence and authorization to travel; and that the receipt notice itself constitutes documentation sufficient to support his readmission into the United States pursuant to 8 C.F.R. § 211.1(b)(1)(i). Thus, when Mr. Ingham rejected Mr. Mersereau's second parole application on December 16, 1994, on the basis of excludability, he was aware that Mr. Mersereau was in possession of a document that apparently entitled him to admission. This raises serious questions as to whether the decision was based on a "facially legitimate and bona fide reason."

The INS concedes that a properly issued waiver application receipt notice would authorize the recipient's admission to the United States pending adjudication of the waiver application. It argues, however, that Mr. Mersereau's receipt notice was issued in error, and without authority. The notice, it claims, was merely a computer-generated acknowledgment of the receipt of the application; the language concerning extension of Mr. Mersereau's alien card was erroneous, and that as a former conditional resident who had departed from the United States after termination of his conditional resident status, Mr. Mersereau was not eligible to apply for a waiver. Thus, it maintains, Mr. Mersereau's possession of the notice was not sufficient to support his admission, and Mr. Ingham did not err in rejecting it as a basis for admission or parole.

In response, Mr. Mersereau argues that the INS's position that he was not eligible to file a waiver application solely because he had departed the United States is inconsistent with INS regulations. He maintains that the language of 8 C.F.R. § 235.11(c) contemplates that a waiver application may

be filed by an alien whose conditional resident status has expired, regardless of whether or not he is physically present in the United States. Such an application may be filed even after the alien has been placed under exclusion proceedings. Thus, he argues, there is no foundation for the INS's position that by leaving the United States, he forfeited his eligibility to file a waiver application, and the agency has no basis for its argument that Mr. Ingham properly rejected his request for admission or parole. He maintains that the Declaration of INS Acting Associate Commissioner Louis D. Crocetti, Jr., dated December 30, 1994, and submitted to this court in opposition to Mr. Mersereau's request for injunctive relief, contains the first official statement by the INS that the agency considers a former conditional resident alien who has left the United States to be ineligible to file a waiver application. This new position, he argues, represents an attempt by the INS to change the regulations, without any rule-making procedure, and to apply a new policy to Mr. Mersereau after his waiver application had been filed and accepted.

I find that the language of 8 C.F.R. § 235.11(c) provides strong support for Mr. Mersereau's argument. The INS has not provided any coherent explanation for its apparently new position on the question of the eligibility of an alien in Mr. Mersereau's position to apply for a waiver. Mr. Mersereau's claim that he was indeed eligible to apply under INS regulations, and that the issued receipt notice constituted acceptance of his application and extension of his status, appears to have considerable merit.[1] Viewed in this light, it appears that a strong argument may be made that Mr. Ingham's summary rejection of Mr. Mersereau's parole application *on the grounds of excludability* was not based on a "facially legitimate and bona fide reason."

### 3. *Irreparable Harm*

■ I have no difficulty in finding that Mr. Mersereau is likely to suffer irreparable harm as a result of his exclusion from the United States during the pendency of the

---

1. This is so despite the fact that on January 4, 1995, the INS Northern Service Center rejected Mr. Mersereau's waiver application on the basis that he was ineligible to file.

proceedings that will determine his admissibility. He is unable to return to his home and to his place of work, and cannot retrieve his truck so that he can earn a living and make his mortgage and loan payments. If he fails to make his payments, he may lose his truck and his business, and face foreclosure on his home.

In this context, it is worth noting that although "an alien seeking *initial* admission to the United States requests a privilege and has no constitutional rights regarding his application, ... once an alien gains admission to our country and begins to develop the ties that go with permanent residence, his constitutional status changes accordingly." *Landon v. Plasencia*, 459 U.S. at 32, 103 S.Ct. at 329 (emphasis added). Mr. Mersereau was provided with conditional permanent resident status in 1989, and has lived here, albeit much of the time as a deportable alien, since then. There is a significant question as to whether, as a former conditional permanent resident whose status may, arguably, have been extended, and who has unquestionably developed the kinds of ties that go with permanent residence, he possesses procedural due process rights that may have been infringed by his exclusion from this country by the summary decision to deny him parole. *Cf. Hamaya v. McElroy*, 797 F.Supp. at 189–193.

### 4. *Provisional Remedy*

Since it is clear that Mr. Mersereau is likely to suffer irreparable harm as a result of his continued exclusion from the United States, and there is a strong possibility that he will succeed on the merits of his claim that District Director Ingham wrongfully denied him parole, he is entitled to injunctive relief. Under normal circumstances, the appropriate form of relief would be to require the INS to reconsider the parole application. Here, however, the question of whether or not excludability is a proper basis for denial of parole remains undecided. Also, the questions of whether Mr. Mersereau was eligible to file a waiver application and whether he was entitled to admission on the basis of his possession of the receipt notice are likely to be, and would most properly be, adjudicated in his exclusion proceedings. Therefore, I cannot at present provide the INS with adequate guidance as to the limits on the exercise of its discretion to grant or deny parole in this case. Under these circumstances, it would not be appropriate to require the INS make a new decision on Mr. Mersereau's parole application.

In order to ensure that Mr. Mersereau is provided with immediate relief, he must be granted temporary parole. Respondent/defendant is directed to parole Mr. Mersereau into the United States under conditions consistent with § 212(d)(5)(A) of the INA, 8 U.S.C. § 1182(d)(5)(A).

So ordered.